423 F.3d 726
 Barbara CLER, Plaintiff-Appellant,
v.
ILLINOIS EDUCATION ASSOCIATION, National Education Association, IEA Unified Legal Services Plan, and Kate Frank/DuShane Unified Legal Services Program, Defendants-Appellees.
 No. 04-3193.
 United States Court of Appeals, Seventh Circuit.
 Argued February 7, 2005.
 Decided September 9, 2005.
 
 David Stevens (argued), Heller, Holmes & Associates, Mattoon, IL, for Plaintiff-Appellant.
 Ralph H. Loewenstein (argued), Loewenstein, Hagen, Oehlert & Smith, Springfield, IL, for Defendants-Appellees.
 Before ROVNER, WILLIAMS, and SYKES, Circuit Judges.
 SYKES, Circuit Judge.
 
 
 1
 When Barbara Cler was terminated from her job as a schoolteacher, she asked her union's legal services plan to provide her with an attorney for purposes of pursuing an employment action against her former employer. When the union refused her request, Cler hired an attorney at her own expense and was ultimately successful in her case. In the present action, Cler contends that the defendants wrongfully denied her request for legal services and seeks to recoup the approximately $25,000 she was forced to spend in retaining an attorney on her own. The district court dismissed the case on the defendants' motion pursuant to FED. R. CIV. P. 12(b)(6), holding that the only claim providing a basis for federal jurisdiction — specifically, under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA") — failed to state a claim upon which relief could be granted. We reverse.
 
 I. Background
 
 2
 The first task in resolving this appeal is identifying the defendant(s) against whom the various claims in the complaint are asserted, an inquiry that should be straightforward but has been complicated by the complaint's confusing structure and cavalier approach to grammatical usage. The caption and opening paragraph of the complaint identify four separate entities as defendants, two of which are labor unions — the Illinois Education Association ("IEA") and the National Education Association ("NEA"). The remaining two defendants are alleged to be welfare benefit plans sponsored by the defendant unions — the IEA Unified Legal Services Plan ("IEA plan") and the Kate Frank/DuShane Unified Legal Services Program ("DuShane plan").[1]
 
 
 3
 After asserting the separate existence of these four defendants, the complaint immediately becomes subsumed in confusion as to whether, and to what extent, the two labor unions and two legal services plans are considered separate and distinct entities for purposes of the claims in the lawsuit. Paragraph two of the complaint reads in part: "The Defendants [IEA] and [NEA] are a labor union . . . ." Paragraph three reads in part: "The plans, [DuShane plan] and [IEA plan], is an employee benefit plan . . . ." There is an obvious disconnect between the plural subjects of these sentences and their corresponding singular objects or verb tenses. The confusion generated by this careless usage is exacerbated by subsequent factual allegations referring only to "the Defendant" or "the Defendant union," without specifying which of the two unions or four defendants is intended. For example, the complaint alleges that "the Plaintiff made several requests of the Defendant that an attorney be appointed on her behalf" and "Plaintiff went to the Defendant union and requested that they provide legal representation for her . . . ." In short, it is difficult to assay the complaint and come away confident as to which defendant is being referenced at any given point.
 
 
 4
 This lack of clarity spills over into the third and final count of the complaint, in which it is alleged that the defendant(s)' failure to provide Cler with legal representation constituted a denial of benefits to which she was entitled under the terms of a welfare benefit plan, in violation of ERISA. This claim, by virtue of its invocation of ERISA, provides the sole basis for Cler's assertion of federal jurisdiction.[2] The DuShane plan is mentioned by name in Count III, but there is no overt mention of the IEA plan. However, in the five paragraphs comprising Count III, the words "defendant" and "defendants" are used. For example, paragraph twenty of the complaint alleges that "the defendants failed to provide benefits to her which she was entitled [sic] under the plan in violation of the provisions of ERISA." As in other parts of the complaint, this allegation refers to plural defendants but a singular "plan." Count III of the complaint also references an exhibit described as an excerpt from "the Defendant unions' booklet relating to providing legal representation." This allegation uses the plural "unions" and the exhibit appears to be two pages taken from an overview of services provided jointly by the NEA and IEA to its members.
 
 
 5
 All four defendants moved to dismiss. The district court construed Count III as leveled only against the DuShane plan. The court then held that the DuShane plan was not a "welfare benefit plan" for purposes of ERISA because the scope of legal services it provided to members was limited to employment-related matters. This limitation, in the district court's view, took the DuShane plan outside ERISA's definition of a welfare benefit plan. That definition includes plans that provide "prepaid legal services," which the court construed as meaning "personal legal services" only, not legal services relating to employment matters. The court also held that the DuShane plan did not qualify as a welfare benefit plan because it did not provide benefits directly to participants such as Cler and instead only reimbursed state affiliates (such as the IEA) for legal expenses incurred "under delineated circumstances."
 
 
 6
 Having determined that the DuShane plan was not a welfare benefit plan within the meaning of ERISA, the district court held that Count III failed to state an ERISA claim, and also declined to exercise supplemental jurisdiction over the state law contract claims. Accordingly, the court dismissed the action in its entirety.
 
 II. Discussion
 
 7
 A. Construction of Count III of the Complaint
 
 
 8
 Cler argues on appeal that she intended to bring Count III, the ERISA claim, against both the IEA plan and the DuShane plan and that her failure to specifically name the IEA plan in Count III was an obvious oversight that was improperly seized upon by the district court as a basis to dismiss her complaint. She argues that her intention to bring Count III against more than one defendant was clear enough under the liberal rules of notice pleading and that the district court erred when it analyzed only whether the DuShane plan was a welfare benefit plan for purposes of ERISA. Cler points to the fact that earlier in the complaint she clearly alleged that both the IEA and DuShane plans are welfare benefit plans for purposes of ERISA, thereby putting the defendants on notice that she was pursuing ERISA claims against both entities.
 
 
 9
 A motion under Rule 12(b)(6) challenges the sufficiency of the complaint, and dismissal of an action under the rule is warranted only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir.2000). We review a district court's grant of a 12(b)(6) motion de novo, accepting the well-pleaded allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir.1997).
 
 
 10
 Working hand in glove with Rule 12(b)(6) is FED. R. CIV. P. 8, subsection (a) of which requires a plaintiff's complaint to contain a "short and plain statement" of his claim and the basis for federal jurisdiction, and subsection (f) of which instructs the courts that "[a]ll pleadings shall be so construed as to do substantial justice." Rule 8(a) thus requires only a "short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." DeWalt, 224 F.3d at 612. In this regard, the Supreme Court has cautioned that "[t]he Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); see also Luckett v. Rent-A-Center, Inc., 53 F.3d 871, 873 (7th Cir.1995) ("District judges must heed the message of Rule 8: the pleading stage is not the occasion for technicalities.").
 
 
 11
 The liberal construction given to a complaint, combined with the minimal notice pleading requirements of Rule 8 and our obligation to draw all reasonable inferences in Cler's favor, persuade us that the district court read the complaint too narrowly in determining that the DuShane plan was the only defendant alleged to have violated ERISA. As we have noted, the complaint is anything but a model of clarity, but neither absolute clarity nor proper attention to grammatical norms is a necessary prerequisite to surviving a Rule 12(b)(6) motion. The inexact wording of the complaint is undeniably confounding; the motion to dismiss presented the district court with the option of either construing Count III broadly and liberally so as to include both the DuShane and IEA plans or narrowly so as to exclude the IEA plan from consideration. The court's decision to construe Count III narrowly is inconsistent with Rule 8 and with the obligation to draw all inferences in favor of the nonmoving party when resolving a motion to dismiss. The dismissal order must therefore be reversed.
 
 B. "Prepaid Legal Services" under ERISA
 
 12
 Because of its erroneously narrow reading of the complaint, the district court did not consider whether the IEA plan was a welfare benefit plan under ERISA. The court did conclude, however, that the DuShane plan was not a welfare benefit plan because it did not offer "prepaid legal services." Under the definition of "welfare benefit plan" contained in 29 U.S.C. § 1002(1), the plans at issue in this suit would fall under the auspices of ERISA if they satisfied each of the following five elements: "(1) a plan, fund, or program[;] (2) established or maintained[;] (3) by an . . . employee organization. . . [;] (4) for the purpose of providing . . . prepaid legal services . . . [;] (5) to participants or their beneficiaries." See Ed Miniat, Inc. v. Globe Life Ins. Group, 805 F.2d 732, 738 (7th Cir.1986); Postma v. Paul Revere Life Ins. Co., 223 F.3d 533, 537 (7th Cir.2000).[3]
 
 
 13
 ERISA does not define the phrase "prepaid legal services" as used in § 1002(1), and apparently there is a dearth of case law, in this circuit and elsewhere, that addresses the scope of the term.[4] "It is a common rule of statutory construction that when the plain language of a statute is clear, courts need look no farther than those words in interpreting the statute." Gildon v. Bowen, 384 F.3d 883, 886 (7th Cir.2004) (quoting Estate of Cowser v. Commissioner, 736 F.2d 1168, 1171 (7th Cir.1984)). The district court bypassed the straightforward meaning of the phrase "prepaid legal services" in favor of a strained analysis that relied upon definitions of slightly different phrases found in the Internal Revenue Code ("IRC") and in an NEA publication. This approach was unwarranted.
 
 
 14
 Specifically, the court turned to a provision in the IRC that delineates the circumstances under which an individual's gross income should include amounts contributed by her employer to a "qualified group legal services plan." 26 U.S.C. § 120(b). The district court stated that this provision of the IRC "defines prepaid legal services," when, in fact, it defines a different phrase used in the IRC, namely, "qualified group legal services plan." The district court then noted that the IRC definition included "personal legal services," and from this the court reasoned that "one of the main elements of prepaid legal services is the provision of `personal legal services.'" Now needing a definition of "personal legal services," the court inexplicably turned to an NEA publication that used the phrase "personal legal services" in describing the types of legal assistance available under a union-sponsored program called the "Attorney Referral Program."[5] What relevance the "Attorney Referral Program" has in this case escapes us. The district court stated that the NEA publication "provide[s] additional guidance as to what may be included in the category of personal legal services." The notion that the meaning of a statutory phrase should be determined by reference to a teacher's union publication is mystifying, to say the least.
 
 
 15
 In short, the district court's construction of the phrase "prepaid legal services" as used in ERISA was based on an income tax statute defining a different phrase and a list of examples of the types of legal assistance available under an NEA program that apparently has nothing to do with this lawsuit. The defendants rely on this same convoluted analysis on appeal. This mode of evaluating whether the complaint states an ERISA claim is clearly flawed.
 
 
 16
 Our own research has disclosed no cases attempting to define the phrase "prepaid legal services" as used in ERISA. We again note that "the cardinal rule is that words used in statutes must be given their ordinary and plain meaning" and that we will "frequently look to dictionaries to determine the plain meaning of words." Sanders v. Jackson, 209 F.3d 998, 1000 (7th Cir.2000). Black's Law Dictionary contains an entry for "prepaid legal services" that reads as follows: "An arrangement — usually serving as an employee benefit — that enables a person to make advance payments for future legal services." Black's Law Dictionary 1220 (8th ed.2004). For purposes of the present case, coming to us in the posture of a motion to dismiss, this definition will suffice. The meaning of the statutory phrase "prepaid legal services" is not limited to "personal legal services," whatever the scope of the latter phrase may be.
 
 
 17
 We express no opinion on the merits of this suit, and indeed do not decide whether the DuShane plan and/or the IEA plan are in fact prepaid legal services plans falling within the scope of ERISA. These are questions the district court will have to answer on remand. Neither do we find it necessary to attempt to articulate a more precise definition of the term "prepaid legal services," beyond what we have noted above, in order to resolve this appeal. Given the preliminary stage of this litigation, we hold only that (1) the district court erred in narrowly construing Count III of the complaint as asserting a claim against the DuShane plan only; and (2) the district court erred in holding that the term "prepaid legal services" in § 1002(1) is limited to "personal legal services," and also erred in determining that the DuShane plan was not an ERISA welfare benefit plan on the basis of that erroneous definition.
 
 
 18
 The judgment of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 In documents filed with the district court, the IEA plan asserted that there is no entity properly known as the "IEA Unified Services Plan" and that the organization's proper name is the "IEA-NEA Legal Services Program."
 
 
 [2]
 The other two counts in the complaint are state law claims for breach of contract
 
 
 [3]
 The unedited version of the definition provides that a welfare benefit plan "requires five elements: (1) a plan, fund or program, (2) established or maintained, (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits, (5) to participants or their beneficiaries."Ed Miniat, 805 F.2d at 738.
 
 
 [4]
 InUnited States v. Blood, 806 F.2d 1218, 1219 (4th Cir.1986), the defendant was convicted of embezzling from an ERISA "prepaid legal services plan." The Fourth Circuit did not have occasion to specifically define "prepaid legal services" in a manner that is instructive here, but the court did describe the program at issue as one where participants were "entitled to certain limited legal services from private attorneys who had contracted with [defendant] to provide such services for a percentage of each member's dues."
 
 
 [5]
 The Attorney Referral Program offers NEA members in participating states a 30% discount from the normal fees charged by private attorneys providing legal services in the areas of real estate, wills and estates, domestic relations, consumer protection, and traffic violations. Using this list to define "personal legal services," the district court concluded that an ERISA prepaid legal services plan must offer legal representation to participants in this particular array of subject matter areas. The DuShane program, which offers legal servicesonly in the area of employment disputes (and not real estate, wills, traffic violations, etc.) did not qualify as an ERISA plan under the district court's definition.